IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EVANSTON INSURANCE COMPANY,

    Plaintiff,

v.                                Cause No. 1:18-cv-654

DESERT STATE LIFE MANAGEMENT,
PAUL A. DONISTHORPE; L. HELEN BENNETT;
LIANE KERR; AYUDANDO GUARDIANS,
INC., a New Mexico Nonprofit Corporation, on
Behalf of its seven protected persons; JOSEPH
PEREZ; CHRISTINE GALLEGOS, individually
and as Guardian of VICTOR BALDIZAN, an
incapacitated adult; SCOTT K. ATKINSON,
as Guardian Ad Litem for VINCENT
ESQUIBEL, JR., an Incapacitated Person;
and CHARLES REYNOLDS, as Conservator for J.W.,
an Incapacitated Person,

    Defendants.

## COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT

COMES NOW, the Plaintiff, Evanston Insurance Company, by and through its attorneys of record Butt, Thornton & Baehr, PC (James H. Johansen, Amy E. Headrick, and Jason J. Patton), and hereby brings this Complaint for rescission and declaratory relief against DESERT STATE LIFE MANAGEMENT, PAUL A. DONISTHORPE; L. HELEN BENNETT; LIANE KERR; AYUDANDO GUARDIANS, INC., a New Mexico Nonprofit Corporation, on Behalf of its seven protected persons; JOSEPH PEREZ; CHRISTINE GALLEGOS, individually and as Guardian of VICTOR BALDIZAN, an incapacitated adult; SCOTT K. ATKINSON, as Guardian Ad Litem for VINCENT ESQUIBEL, JR., an Incapacitated Person; and CHARLES REYNOLDS, as Conservator for J.W., an Incapacitated Person,, and alleges as follows:

## THE PARTIES

1. Plaintiff Evanston Insurance Company ("Evanston") is an Illinois corporation with its principal place of business and center of operations in Deerfield, Illinois.

2. Defendant Desert State Life Management ("DSLM") is a New Mexico non-profit corporation with its principal place of business in Albuquerque, New Mexico.

3. Defendant Paul Donisthorpe is a resident of Bernalillo County, New Mexico.

4. Defendant Helen Bennett is a resident of Bernalillo County, New Mexico.

5. Defendant Liane Kerr is a resident of Bernalillo County, New Mexico.

6. Defendant Ayudando Guardians, Inc. is a New Mexico not for profit company, doing business in Bernalillo County, New Mexico.

7. Defendant Joseph Perez is a resident of Bernalillo County, New Mexico.

8. Defendant Christine Gallegos is a resident of Valencia County, New Mexico.

9. Defendant Scott K. Atkinson is a resident of Bernalillo County, New Mexico.

10. Defendant Charles Reynolds is a resident of Bernalillo County, New Mexico.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this coverage dispute occurred in this judicial district.

## GENERAL ALLEGATIONS AND POLICY PROVISIONS

The Incidents of Loss and Associated Claims

13. DSLM acts as a trustee for disabled individuals and is certified pursuant to the New Mexico Trust Company Act, §58-9-1 NMSA 1978.

14. For all times relevant, Paul A. Donisthorpe acted as Chief Executive Officer and Director for DSLM.

15. In December, 2016, the New Mexico Financial Institutions Division ("FID") began preparing to conduct a financial examination of DSLM pursuant to the Trust Company Act, §58-9-9(A) NMSA 1978 and notified Donisthorpe of the forthcoming examination, which was to begin February 6, 2017.

16. On March 28, 2017, FID issued a formal finding that DSLM's financial state was unsafe and unsound and issued an Order requiring DSLM to remedy the situation within sixty (60) days or FID would petition to place DSLM in receivership.

17. The FID investigation revealed that over $4,000,000.00 in trust investment account funds managed by DSLM have been transferred into accounts controlled in whole or in part by Donisthrope from 2006 through the time of the investigation.

18. In April, 2017, FID notified several DSLM clients that their money was gone.

19. On May 19, 2017, FID filed a petition in New Mexico State Court seeking to have DSLM placed in receivership. *See Financial Institutions Division v. Desert State Life Management, et al.* NO. D-202-CV-2017-03838.

20. In addition to the State action against DSLM, there are also private lawsuits that have been filed by a number of DSLM clients seeking to recover the lost funds. The private suits have been consolidated in *Ayudando Guardians, Inc. v. Desert State Life Management, et al.,* Case No. D-202-CV-2017-03997. Defendants Perez, Gallegos, Atkinson and Reynolds are claimants in that consolidated action.

Representations from the Insured and Issuance of the Policy

21. On October 10, 2016, Donisthorpe, in his role as CEO, presented an application for professional liability insurance.

22. The application represented there had been no prior loss or claims during the last five years. Specifically, Donisthorpe answered "no" to the following questions:

> Is the Applicant or any principal, partner, owner, officer, director, employee, manager or managing member of the Applicant or any person(s) or organization(s) proposed for this insurance aware of any fact, circumstance, situation, incident or allegation of negligence or wrongdoing, which might afford grounds for any claim such as would fall under the proposed insurance?
>
> Has the Applicant and/or any of its principals, partners, owners, officers, directors, manages and/or managing members or employees, its predecessors, subsidiaries, affiliates, and/or any other person or organization proposed for this insurance been involved in or have knowledge of any pending or completed investigative or administrative proceedings or governmental regulatory proceedings, actions or notices?

*See* Exhibit A, attached hereto.

23. The application further represented that DSLM had no knowledge of any loss or circumstance that could give rise to a claim. *See* Exhibit A.

24. Donisthorpe signed the application on October, 10, 2016. *See* Exhibit A.

25. On November 1, 2016, at Donisthorpe's request and based on the representations made in the application for insurance, Evanston issued DSLM Professional Liability Insurance Policy #EO865156, with a Policy Period of November 1, 2016 to November 1, 2017.

26. Donisthorpe's representations to Evanston in the application materially affected the acceptance of the risk assumed by Evanston.

27.     Evanston would not have issued the Policy under the same terms and premium, if at all, had it known the true facts regarding the trust investment account funds and DSLM's financial condition.

### The Policy Application and False Statements by Donisthorpe

28.     The Application for the Policy completed and signed by Donisthorpe included the following wording:

NOTICE TO THE APPLICANT - PLEASE READ CAREFULLY

No fact, circumstance or situation indicating the probability of a claim or action for which coverage may be afforded by the proposed insurance is now known by any person(s) or entity(ies) proposed for this insurance other than that which is disclosed in this application. It is agreed by all concerned that if there be knowledge of any such fact, circumstance or situation, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance (emphasis supplied).

The policy applied for is SOLELY AS STATED IN THE POLICY, if issued, which provides coverage on a claims made basis for ONLY THOSE "CLAIMS" THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD, unless the extended reporting period option is exercised in accordance with the terms of the policy. The policy has specific provisions detailing claim reporting requirements.

The underwriting manager, Company and/or affiliates thereof are authorized to make any inquiry in connection with this application. Signing this application does not bind the Company to provide or the Applicant to purchase the insurance.

This application, information submitted with this application and all previous applications and material changes thereto of which the underwriting manager, Company and/or affiliates thereof receives notice is on file with the underwriting manager, Company and/or affiliates thereof and is considered physically attached to and part of the policy if issued. The underwriting manager, Company and/or affiliates thereof will have relied upon this application and all such attachments in issuing the policy. If the information in this application or any attachment materially changes between the date this application is signed and the effective date of the policy, the Applicant will promptly notify the underwriting manager, Company and/or affiliates thereof, who may modify or withdraw any outstanding quotation or agreement to bind coverage.

WARRANTY

> I/We warrant to the Company, that I/We understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/We authorize the release of claim information from any prior insurer to the underwriting manager, Company and/or affiliates thereof.

29.     As set forth above, Donsithorpe signed the application containing the aforementioned exclusionary language on October 10, 2016.

## The Policy Terms and Conditions

30.     The Policy provides, in part, under the Common Policy Provisions:

> **E. REPRESENTATIONS**
>
> By acceptance of this policy, the Insureds agree as follows:
>
> 1. That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and
>
> 2. That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

Exhibit B, attached hereto.

31.     Coverage A - Professional Liability Coverage ("Coverage A") contains an Insuring Agreement, which states:

> **A.  Coverage A – Professional Liability Coverage – Claims Made Coverage:**
>
> The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5.A. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to the Section Claims A., Claims Reporting provision,

6

By reason of:

    1.    A Wrongful Act; or

    2.    A Personal Injury;

In the Performance of Specified Professional Services rendered or that should have been rendered by the Insured or by any person for whose Wrongful Act or Personal Injury the Insured is legally responsible,

Provided:

    a.    The entirety of such Wrongful Act(s) or Personal Injury(ies) happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 5.A. of the Declarations and before the end of the Policy Period; and

    b.    Prior to the effective date of this Coverage Part the Insured had no knowledge of such Wrongful Act(s) or Personal Injury(ies) or any fact, circumstance, situation or incident, which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

Exhibit B.

32.    Coverage A. also contains several applicable exclusions. Included in the Exclusions are the following:

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment:

    I.    Based upon, arising out of or any way involving any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices, or tortious interference in another's business or contractual relationships;

    J.    Based on, arising out of, or in any way involving:

    1.    Conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:

    a.    The strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another

    Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or

    b. Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation; or

    2. The gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled; provided, however, this exclusion shall not apply to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be any profit, remuneration or advantage to which such Insured was not legally entitled; provided, that any fact pertaining to any Insured shall not be imputed to any other Insured under this Coverage Part for the purpose of determining the applicability of this exclusion;

 P. Based upon or arising out of any conversion, misappropriation, commingling of or defalcation of funds or property.

Exhibit B.

33. Beginning in late March of 2017, Evanston received a series of notices of claims for ongoing loss as a result of the alleged mismanagement of trust investment funds.

34. Based on the misrepresentations of material facts in the application, and according to the Policy's terms, Evanston is entitled to rescind the policy and/or deny coverage for any and all claims asserted.

35. By reason of the foregoing, there now exists an actual justiciable controversy between Evanston and DSLM as required by 28 USC § 2201. Consequently, this Court is vested with the power to declare and adjudicate the rights and other legal relationships of the parties to the instant litigation with respect to the issues raised by this Complaint.

**Donisthorpe's Admissions and Criminal Action**

36. Donisthorpe was prosecuted for violation of 18 U.S.C. §1343 (wire fraud) and for violation of 18 U.S.C. §1957 (money laundering) in *United States v. Donisthorpe,* Case No. 1:17-cr-03311-JB-1.

37. On November 27, 2017, Donisthorpe pleaded guilty to one count of wire fraud and one count of money laundering. *See* Exhibit C, attached hereto at 21: 13-22.

38. At Donisthorpe's plea hearing he stated the following:

> I was in fact in charge of a trust company here in Albuquerque named Desert State Life Management and was responsible for assets of accounts therein. And from the period of time from 2009 to 2016, I did knowingly and intentionally obtain money and property through materially false and fraudulent pretenses and representations, transferring these funds to an account that I controlled personally. I presented—I basically presented false and materially incorrect investment and distribution, unfortunately, to these clients, and I do admit that I fraudulently obtained client funds through this scheme. I spent these monies on personal assets, including other business ventures, a home mortgage and other expenditures that had no relation to these accounts. I did use telephone and mailing services to transfer information to investment advisers instructing them to liquidate assets…

Exhibit C, attached hereto at 17:18-25; 18:1-10.

39. Based on the statements Donisthorpe made in his plea, the representations made in the application for insurance coverage on October, 10, 2016, were false.

40. Based on Donisthorpe's plea, there is no coverage for the asserted claims pursuant to the Insuring Agreement.

41. Based on Donisthorpe's plea, Exclusions I, J and P apply and exclude the asserted claims from coverage under the Evanston Policy.

## COUNT ONE—RESCISSION
### (Material Misrepresentations)

42. Evanston incorporates the allegations set forth above as if fully set forth herein.

3. Donisthorpe made material misrepresentations regarding the financial condition of DSLM.

44. Donisthorpe made material misrepresentations regarding his knowledge of circumstances, which could give rise to a claim.

45. Donisthorpe made material misrepresentations to induce Evanston to enter into the contract of insurance.

46. Evanston relied on the representations regarding the lack of prior losses and the absence of circumstances which could give rise to a claim in deciding to issue the Policy.

47. Evanston had no knowledge of the financial condition of DSLM or the missing trust investment funds when it issued the Policy, and if it had, it would not have issued the Policy.

48. Evanston has offered to return the premium DSLM paid for the Policy from its inception date and is entitled to rescind the contract of insurance. *See* Exhibit D, attached hereto.

49. Evanston has incurred costs and expenses associated with issuing the Policy based on Donisthorpe's material misrepresentations and is entitled to restitution for the sums expended.

50. This Court has the power and authority to rescind the contract of insurance and declare the contract void *ab initio* due to the material misrepresentations by Donisthorpe.

51. This Court should declare that Policy #EO865156 issued to DSLM is void *ab initio* due to the material misrepresentations by Donisthorpe.

**COUNT TWO—DECLARATION OF NO DUTY TO DEFEND OR INDEMNIFY ASSERTED CLAIMS [as alternative relief]**

52. Evanston incorporates the allegations set forth above as if fully set forth herein.

53. The claims asserted are based on Donisthorpe's admission of knowingly and intentionally obtaining money and property from DSLM's client trusts through materially false and fraudulent pretenses and representations, transferring these funds to an account he controlled personally. Donisthorpe fraudulently obtained client funds through this scheme.

54. Donisthorpe has pleaded guilty to violations of Federal Law as a result of this conduct.

55. To the extent the asserted claims are based on the conduct admitted by Donisthorpe, which includes fraud, violations of federal law, and wrongful misappropriation of client funds, Exclusions I, J and P of the Evanston Professional Liability Policy exclude coverage for those claims, and Evanston has no duty to defend or indemnify any claims based on Donisthorpe's conduct.

56. Plaintiff therefore respectfully petitions this Honorable Court for a judicial declaration to the effect that (*inter alia*, without limitation):

- The Policy is rescinded, in its entirety, rendering it void, *ab initio*, as to all Insureds, such that Evanston owes no benefits and has no obligations thereunder.

- As alternative relief, Coverage for the Claims described herein and any other undisclosed or related claims is excluded by the Application Exclusion, because Donisthorpe failed to disclose the facts, circumstances, and situation underlying those Claims (or the Claims themselves) in response to applicable Questions in the Application;

- As alternative relief, Coverage for the Claims described herein and any other client fund misappropriation claims is unavailable pursuant to Insuring Agreement's requirement that the Wrongful Act complained of "aris[e] out of Professional Services"

- As alternative relief, Coverage for the Claims described herein and any other undisclosed or related claims is excluded pursuant to Proviso no. 2 of the Insuring Agreement, which provides that coverage is unavailable if any Insured had any knowledge of any fact, circumstance, situation or incident which would lead a reasonable person in that Insured's position to conclude that a Claim was likely.

WHEREFORE, Plaintiff Evanston Insurance Company respectfully requests that this Court:

A. Order, Adjudge, and Decree that the Policy is rescinded, in its entirety, and void, *ab initio*, as to all Insureds;

B. In the alternative, Order, Adjudge, and Decree that Defendants are not entitled to any coverage under the Policy for any Claims, and that such Claims are uninsurable as a matter of law, and that there is no duty to defend or indemnify Defendants DSLM, Donisthorpe, Kerr and Bennett;

C. Award Evanston any such other and further relief as is just and appropriate; and

D. Retain jurisdiction over this matter to oversee the distribution of the tendered premium refund, in such manner as the Court may direct, for the benefit of DSLM's defrauded client-victims.

Respectfully Submitted,

BUTT THORNTON & BAEHR PC

*/s/ James H. Johansen*
James H. Johansen
Amy E. Headrick
Jason J. Patton
*Attorneys for Plaintiff*
  *Evanston Insurance Company*
P.O. Box 3170
Albuquerque, NM  87190-3170
(505) 884-0777
jhjohansen@btblaw.com
aeheadrick@btblaw.com
jjpatton@btblaw.com